## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    CR-17-122-6-SLP |
| | ) | CIV-22-85-SLP |
| JOSE MANUAL MARQUEZ SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Before the Court is Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 822], to which the Government has responded [Doc. No. 830] and Defendant has replied [Doc. No. 834]. Also before the Court are Defendant's Motions for Status Update [Doc. Nos. 867 and 872]. These matters are at issue. Upon review and for the reasons that follow, the § 2255 Motion is DENIED and the Motions for Status Update are DENIED as MOOT.

## I.     Factual and Procedural History

On May 29, 2018, a jury found Defendant guilty of multiple drug-related charges, including conspiracy to possess with intent to distribute and distribution of methamphetamine or cocaine hydrochloride. *See* Verdict [Doc. No. 555] (finding Defendant guilty of Counts 1, 30, 31, 38, 41, 42, 44, 57, 59 and 90 of the Amended Superseding Indictment [Doc. No. 507]). Defendant was sentenced to a total term of 132 months' imprisonment.[1]

---

[1] Defendant's sentence has been reduced to 121 months pursuant to his Motion for Sentence

Defendant filed a direct appeal of his conviction and argued that a fatal variance existed between the conspiracy charged and the evidence presented at trial. He also challenged the quantity of drugs this Court attributed to him at sentencing. The Tenth Circuit affirmed his conviction. *See United States v. Sanchez*, 979 F.3d 1256 (10th Cir. 2020).

Defendant was represented by appointed counsel, Jeffrey D. Trevillion, Jr., in proceedings before the district court. He was represented by appointed counsel, Ty Gee, on direct appeal of his conviction.

## II.    Defendant's § 2255 Claims

Defendant brings four claims of ineffective assistance of trial and appellate counsel. First, he argues trial counsel did not object to the jury instructions as a constructive amendment of the drug conspiracy charge (Count I of the Indictment). Second, Defendant argues his trial counsel should have moved to dismiss the Indictment based on a violation of the Speedy Trial Act and his Sixth Amendment right to a speedy trial. Third, Defendant claims that his trial counsel did not properly investigate and challenge the drug conspiracy charge. Fourth, Defendant contends his trial counsel should have moved to sever his case from the other ten co-defendants. Defendant claims appellate counsel was ineffective for failing to raise these claims on direct appeal.

## III.    Discussion

Defendant's ineffective assistance of counsel claims are governed by the well-

---

Reduction based on the retroactive application of Amendment 821 to the U.S. Sentencing Guidelines. *See* Order [Doc. No. 864].

established framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish ineffective assistance of counsel, a movant must show (1) that counsel's representation was deficient because it "fell below an objective standard of reasonableness" and (2) that counsel's "deficient performance prejudiced the defense." *Id*.

To establish ineffective assistance of appellate counsel, the court examines the merits of the omitted issue. If the omitted issue is meritless, its omission does not constitute deficient performance. *Frederick v. Quick*, 79 F.4th 1090, 1105 (10th Cir. 2023); *see also Harmon v. Sharp*, 936 F.3d 1044, 1063 (10th Cir. 2019) ("[A]n ineffective assistance of appellate counsel claim lacks merit if the [defendant] argues that appellate counsel should have asserted *meritless* ineffective assistance of trial counsel claims."). As to the prejudice prong, the defendant must show a reasonable probability that but for counsel's unreasonable failure to raise a particular non-frivolous issue, he would have prevailed on his appeal. *Id*.

"The court may address the two *Strickland* prongs in either order and need not address both if the defendant has failed to satisfy one." *Id*. (citing *Strickland*, 466 U.S. at 697).

### A.     Alleged Constructive Amendment of Count 1

Defendant claims a constructive amendment of Count 1 of the Superseding Indictment [Doc. No. 244] occurred because Count 1 alleged a conspiracy to distribute methamphetamine ***and*** cocaine hydrochloride but the jury instructions permitted the jury to convict for a conspiracy to distribute methamphetamine ***or*** cocaine hydrochloride.

Defendant specifically references Jury Instruction No. 25, *see* Doc. No. 552 at 38-39, and contends his counsel should have objected to the instruction.  This claim is rejected.

"A constructive amendment of an indictment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir.1999) (quoting *United States v. Hornung*, 848 F.2d 1040, 1046 (10th Cir.1988)).  Here, no such constructive amendment occurred.

"It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." *United States v. DeChristopher*, 695 F.3d 1082, 1095 (10th Cir. 2012).  As the Government argues, this principle has been applied to drug conspiracy cases.  *See* Resp. at 4 (citing, inter alia, *United States v. Atencio*, 435 F.3d 1222, 1229 n. 2 (10th Cir. 2006) (finding legal challenge had "no merit" where it was based on fact that "Count 1 of the indictment charged that 'the violations involved at least 30,000 kilograms of marijuana and 150 kilograms of cocaine,' . . . while the jury instructions allowed for a conviction based on an enterprise that 'involved at least 30,000 kilograms of marijuana . . . or 150 kilograms of cocaine'").  Because this claim lacks merit, it necessarily follows that neither trial nor appellate counsel were ineffective for failing to raise the claim.  Accordingly, Ground One is denied.

### B.     Speedy Trial Rights

Defendant next argues a motion to dismiss should have been filed on grounds his right to a speedy trial was violated.  Defendant correctly asserts that he was arraigned on July 6, 2017 and that his speedy trial clock commenced at that time.  He argues that delays between July 6, 2017 and November 27, 2017 were unreasonable and "the Court issued no excludable time on the record from the Speedy Trial clock."  Mot. at 5.

Defendant further argues that on November 28, 2017, he was arraigned on a Superseding Indictment and that from that date, until May 29, 2018, "no excludable time, good cause or reason was set on the record" resulting in a violation of his speedy trial rights.  According to Defendant, his case was "not complex or unusual" and the delays "were unreasonable because plea reduced the chance of a Complex Federal Criminal Matter in violation of his Sixth Amendment Rights to a speedy trial."  Mot. at 6.  He claims resulting prejudice in wholly conclusory fashion stating that his "Jury Trial resulted in an unreliable or fundamentally unfair outcome of the proceedings."  *Id*.

### 1.     Speedy Trial Act

"Under the [Speedy Trial] Act, a federal criminal trial must begin within seventy days of the filing of the indictment or from the date of the defendant's initial appearance, whichever occurs later."  *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014) (citing 18 U.S.C. § 3161(c)(1)).  "Several enumerated events are excluded from the statute's prescribed seventy-day period, thus tolling the speedy-trial clock."  *Id*. (internal quotation marks omitted).  One of those enumerated events is the filing of a pretrial motion which excludes periods of delay attributed to the filing of the motion until the conclusion

of the motion hearing or other prompt disposition of the motion.  *See* 18 U.S.C. § 3161(h)(1)(D). Also excluded is any period of delay resulting from a continuance granted based on the judge's findings that the ends of justice outweigh the best interest of the public and the defendant in a speedy trial. *See id*. § 3161(h)(7)(A).  Upon review of the record, and for the reasons discussed in detail by the Government in its Response, no Speedy Trial Act violation occurred.   Several pretrial motions resulted in excludable periods of delay.

Defendant takes particular issue with the alleged failure by the Court to make an ends of justice finding in support of the continuance.  But the Court's continuance order expressly includes such a finding.  *See* Order [Doc. No. 169 at 2-3]; *see also* Order [Doc. No. 184] at 1-3.[2]  Defendant makes no other argument to demonstrate a violation of the Speedy Trial Act.   Accordingly, he cannot establish any prejudice resulting from his counsel's alleged failure to raise the issue and his claims of ineffective assistance of trial and appellate counsel necessarily fail.

### 2.     Sixth Amendment

The Sixth Amendment also provides a criminal defendant "the right to a speedy and public trial."   U.S. Const. amend. VI.[3]   To determine whether a delay violates this constitutional right, a court must balance four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of delay; (2) the reason for the delay; (3) the

---

[2] As discussed in the context of Defendant's Sixth Amendment claim, the ends-of-justice findings were premised on the complexity of the case, findings wholly supported by the record.

[3] The Government did not address Defendant's speedy trial challenge under the Sixth Amendment. Because Defendant makes reference to his Sixth Amendment right to a speedy trial, albeit in a fleeting manner, the Court, out of an abundance of caution, also addresses whether Defendant's right to a speedy trial was violated under the Sixth Amendment.

defendant's assertion of his right; and (4) prejudice to the defendant." *Margheim*, 770 F.3d at 1325-26 (quotations omitted).

### a.    Length of Delay

The length of the delay involves a "double inquiry." *United States v. Seltzer*, 595 F.3d 1170, 1177 (10th Cir. 2010). First, to trigger a speedy trial analysis "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). If this showing is made, the court then must consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* (quoting *Doggett*, 505 U.S. at 652); *see also Margheim*, 770 F.3d at 1326 (The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial.").

Here, Defendant was indicted on June 20, 2017 and his trial commenced approximately eleven months later on May 21, 2018. *See* Minute Entry [Doc. No. 532].[4] Generally, a delay approaching one year satisfies the presumption of prejudice. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). However, when the charges are complex, "even a two year interval between charges and trial may not be deemed a 'delay.'" *Seltzer*, 595 F.3d at 1176 (citing *Barker*, 407 U.S. at 531 ("[T]he delay that can

---

[4] Jury selection occurred on May 10, 2028. *See* Minute Entry [Doc. No. 510].

be tolerated for an ordinary street crime is considerably less than for a serious complex conspiracy.")).

The record reflects that on July 24, 2017, Defendant moved to have the case declared complex and several co-defendants joined in that request. *See* Mot. [Doc. No. 158]. The Court granted the Motion and also granted the Government's request to consolidate trial dates as several co-defendants had been arraigned at different times and thus were on different trial dockets. *See* Order [Doc. No. 169]. The Court also granted the Government's request to continue the trial from the August 2017 and September 2017 trial dockets to the May 2018 trial docket. *See id.; see also* Order [Doc. No. 184]. The is the only continuance that was granted.

The Court detailed the reasons for declaring the case complex, including the significant amount of discovery at issue, the fact that the majority of the audio files (including information from ten wiretaps) were in the Spanish language, the number of defendants involved, the Government's anticipation of the filing of a Superseding Indictment to charge additional defendants, and the anticipated voluminous pretrial motions. *See* Doc. No. 184 at 2.[5]

Given this record, the Court finds Defendant has not submitted sufficient evidence to demonstrate that the delay of his trial is presumptively prejudicial. This case was undoubtedly complex and the delay at issue – eleven months – was less than the one year

---

[5] The Government did, in fact, file a Superseding Indictment on November 15, 2017. *See* Doc. No. 244. The Superseding Indictment contained 125 counts. *See id.*

presumptive period in a non-complex case.  The Court, therefore, finds no violation of Defendant's Sixth Amendment speedy trial rights.

But even if the Court were to proceed to analyze the additional factors, the Court finds no violation.

### b.      The Reason for the Delay

The record shows the reason for the delay was at the request of the defendants in this case – and that request was led by Defendant Sanchez.  Although the Government joined in that request, there is no indication that the delay should be attributed to the Government instead of the defendants.  *Cf. Batie*, 433 F.3d at 1293 ("Absent extraordinary circumstances, *Barker* counsels us not to find a violation of the right to a speedy trial when the defendant's actions indicate he had no desire for a speedy trial.").

### c.      Defendant's Assertion of His Right to a Speedy Trial

Defendant did not assert his speedy trial right at any time until his pending post-conviction proceeding.  To the contrary, Defendant led in the request to declare this case complex and did not oppose the May 2018 trial setting.  Nothing in the record indicates Defendant opposed his attorney's request to declare the case complex.[6]   In wholly conclusory fashion, Defendant states only that "the case was not complex or unusual."

---

[6] Defendant's attorney states that he "discussed the enormous amount of discovery to be reviewed including recorded phone calls and video surveillance that would take in excess of 70 days to review.  Mr. Sanchez consented to the amount of time I thought was necessary to review the discovery in this case."  *See* Aff. of Trial Counsel [Doc. No. 830-1].  In his Reply, *see* Doc. No. 834, Defendant does not challenge the statements of his attorney.

Mot. at 6.  As set forth, the record belies this statement.  The record amply demonstrates the complex nature of the case.  This factor, therefore, weighs against Defendant.

### d.    Whether the Delay Prejudice Defendant

A defendant bears the burden to show that he was prejudiced by the delay.  *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014).   Here, Defendant makes absolutely no showing of prejudice due to the delay of his trial.  He argues only that his attorney's deficient performance prejudiced him.  But he fails to articulate how or why he was prejudiced.  Accordingly, this factor, too, weighs against Defendant.

On balance, the *Barker* factors clearly weigh against Defendant.   As such, Defendant fails to show his Sixth Amendment right to a speedy trial was violated.

As set forth, Defendant must show both prejudice and deficient performance to succeed on a claim of ineffective assistance of counsel.  Because Defendant has not shown a violation of his rights under the Speedy Trial Act or the Sixth Amendment, it necessarily follows that he has not shown prejudice.  Moreover, the record demonstrates counsel's performance was not deficient.   To the contrary, counsel engaged in reasonable trial strategy when he asked for a continuance given the complexity of the case.

Accordingly, neither trial nor appellate counsel were ineffective.   Defendant's second ground for relief, therefore, is denied.

### C.    Investigative Efforts by Trial Counsel

In his third claim, Defendant contends that his trial counsel failed to investigate and challenge the drug conspiracy charge (Count 1 of the Superseding Indictment). Specifically, Defendant argues that his counsel did not properly investigate whether

Defendant was part of the Count 1 conspiracy, failed to secure an expert witness to interpret wiretaps and summaries, and failed to move to dismiss the indictment on grounds that the wiretaps and summaries were unreliable. He further claims his counsel failed to "properly investigate and litigate during the *James* Hearing." Mot. at 9.[7] He contends the testimony of Agent Marisol Flores at the *James* hearing on March 6, 2018 supports his "actual innocence."

Defendant's failure to investigate claim is wholly conclusory and fails on that basis. He does not identify in what manner counsel did not conduct an adequate investigation. For example, he does not identify any witnesses that should have been interviewed, or evidence that should have been addressed. *Cf Martinez v. Tafoya*, 13 F. App'x 873, 877 (10th Cir. 2001) ("When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must demonstrate, with some precision, the content of the testimony they would have given at trial." (citation and internal quotation mark omitted)).

Moreover, the record demonstrates trial counsel "investigated all reasonable leads." *See* Doc. No. 830-1 at 2, ¶ 13. He hired "an interpreter to analyze the pertinent recordings purporting to be Mr. Sanchez." *Id*. He also reviewed the recordings with Defendant who "admitted he was on the government recordings but [claimed] his conversations were about marijuana sales not cocaine or methamphetamine." *Id*. Consequently, trial counsel

---

[7] *See United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc).

"focused on the slang terms and whether the quantities and pricing were consistent with marijuana trafficking." *Id.*

Defendant takes issue with his counsel's use of an interpreter instead of a wire-tap expert. *See* Reply at 9-10. Defendant states that "had trial counsel secured Mr. Sanchez with a wiretap expert witness to review whether the Government's findings and summaries on their wiretap communications were reliable and provide testimony" a "reasonable probability" exists that the "result of the proceeding would have been different." *Id.* at 9. But Defendant offers nothing but conclusory assertions and such conclusory assertions "are insufficient to establish ineffective assistance of counsel." *United States v. Zunie*, 302 F. App'x 759, 762 (10th Cir. 2008) (citing *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994)); *see, also Zajac v. United States*, 154 F.Supp.3d 1230, 1236 (D. Utah 2015) ("Allegations that are speculative, vague, or conclusory are insufficient to satisfy the *Strickland* standard." (internal quotation marks and citations omitted), *aff'd*, 680 F. App'x 776 (10th Cir. 2017)).

To the extent Defendant claims he is "actually innocent" based on testimony of Agent Marisol Flores at the *James* hearing, that claim lacks merit.[8] Fundamentally, a *James* hearing is a *pretrial* hearing to determine the admissibility of evidence at trial. Defendant does not point to evidence introduced at trial. Regardless, Defendant mischaracterizes the testimony of Agent Flores. A review of the *James* hearing transcript

---

[8] Defendant cites testimony from the original *James* hearing. *See James* Hearing Tr. [Doc. No. 395]. Although the Court held a supplemental *James* hearing, *see* Suppl. *James* Hearing Tr. [Doc. No. 511], Defendant does not address any testimony at the supplemental *James* hearing.

establishes that she relied on extensive reports and summaries, wiretap communications of Defendant and surveillance as evidence of the conspiracy. When Agent Flores was asked by Defendant's counsel on cross-examination if she had testified at the *James* hearing "that a conspiracy existed between these defendants" she ultimately answered that she had not provided such a statement to the Court in the course of the hearing. *See* James Hearing Tr. [Doc. No. 395] at 83, 83-85. As the Court interjected, to the extent Defendant's counsel was "asking her to draw a legal conclusion about whether or not there is a conspiracy . . . the agent's opinion would be irrelevant." *Id.* at 85. Agent Flores's pretrial testimony in no way supports a claim of actual innocence. *See, e.g., United States v. Antwine*, No. 24-6042, 2024 WL 3824896 at *1 (10th Cir. Aug. 15, 2024) ("To support a claim that constitutional error (here, ineffective assistance of counsel) resulted in the conviction of one actually innocent where a trial has occurred, a movant must come forward with 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).[9]

---

[9] The Court further notes that the evidence of Defendant's involvement in the conspiracy was vetted by the Tenth Circuit in the context of Defendant's variance claim. As the Tenth Circuit stated: "Sanchez *concedes* that he participated in a narrower conspiracy to distribute methamphetamine . . . ." *Sanchez*, 979 F.3d at 1263. And the Tenth Circuit further found the "direct evidence against Sanchez – consisting primarily of intercepted calls – was *strong*. *Id.* As the Tenth Circuit discussed:

> The transcripts of these phone calls and related testimony unequivocally show that on multiple occasions, Sanchez ordered and coordinated the delivery of methamphetamine for redistribution. Sanchez *admits* that he participated in these calls and purchased methamphetamine from Lopez on five occasions.

*Id.* (emphasis added).

Finally, Defendant claims his counsel should have filed a pretrial motion to dismiss the indictment due to the unreliability of the wiretaps and summaries.   But, as the Government correctly argues, "[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006).  Accordingly, any pretrial motion to dismiss raising this issue would have lacked merit.   Trial counsel, therefore, was not ineffective for failing to file such a motion, and appellate counsel was not ineffective for failing to raise the issue on direct appeal.  Plaintiff's third ground for relief, therefore, is denied.

### D.    Failure to File a Motion to Sever

As his final claim of ineffective assistance of counsel, Defendant contends his trial counsel "fail[ed] to file a pre-trial Motion to Sever his Indictment from other defendants." Mot. at 11-12.  Defendant's claim fails because his counsel *did* file a motion to sever. Specifically, he joined in the motion filed by his co-defendant, Blanca Estella Flores.  *See* Doc. Nos. 151, 167 and 174.

In denying the severance request, the Court noted that "[t]he remaining defendants who join in Defendant Flores's motion do not articulate any grounds for severance specific to them" and, therefore, "limit[ed] its review to the grounds asserted by Ms. Flores."  *See* Order [Doc. 404] at 3.  Those grounds included: (1) the likelihood that the defendant would want to call codefendants as witnesses; (2) the likelihood that defendant would have a defense antagonistic to the codefendants; and (3) the markedly different degree of culpability between defendant and the codefendants.  *Id.* at 3.

To the extent Defendant argues his trial counsel should have separately moved for a severance, his claim fails. He only offers wholly conclusory assertions that a joint trial "impaired and deprived" him of a fair trial. Mot. at 12. Although he alleges trial counsel "failed to properly investigate a pre-trial Motion to Sever his case" and alleges this constitutes "deficient performance" he offers only conclusions divorced of any factual basis for his claim.

To warrant severance under Rule 14(a) of the Federal Rules of Criminal Procedure, a defendant must show actual prejudice. *United States v. Clark*, 717 F.3d 790, 818 (10th Cir. 2013). This standard requires a showing of "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* In support of his ineffective assistance claim, Defendant makes no such showing and, therefore, cannot demonstrate prejudice arising from his trial counsel's alleged failure to separately move for a severance.[10] Accordingly, neither trial nor appellate counsel were ineffective and Ground Four is denied.

## IV.    <u>Evidentiary Hearing</u>

In a § 2255 proceeding, the district court is not required to grant an evidentiary hearing on a defendant's claims where "the motion and the files and records of the case

---

[10] On direct appeal, the Tenth Circuit addressed, in the context of Defendant's variance claim, the "spillover effect", if any, as to evidence of a larger conspiracy in which Defendant claimed he played no role. The Tenth Circuit found there was "little risk of prejudicial spillover" on the facts presented. *Sanchez*, 979 F.3d at 1263-64. Although this holding does not govern the claim raised here, the Court notes the issue of "spillover effect" was addressed (and rejected) in the Court's order denying the severance motion. *See* Order [Doc. No. 404] at 5.

conclusively show that the [defendant] is entitled to no relief. . . ."  28 U.S.C. § 2255.  The court concludes that the record in this case conclusively shows that Defendant is not entitled to any relief on any of the claims he asserts.  Therefore, Defendant is not entitled to an evidentiary hearing.

## V.     <u>Conclusion</u>

IT IS THEREFORE ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 822] is DENIED.  A separate judgment shall be entered.

IT IS FURTHER ORDERED that Defendant's Motions for Status Update [Doc. Nos. 867 and 872] are DENIED as MOOT.

IT IS FURTHER ORDERED that  pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). To make this showing, Defendant "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]'" *United States v. Manzanares*, 956 F.3d 1220, 1226-27 (10th Cir. 2020) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the present case, the Court concludes that Defendant has not made a substantial showing of the denial of a constitutional right. Therefore, a COA is DENIED and the denial shall be included in the judgment.

IT IS SO ORDERED this 5th day of September, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE